**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTIAN E. GAYBOR,** | ) | **CASE NO.  4:14CV318** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | **Magistrate Judge George J. Limbert** |
| **v.** | ) | |
| | ) | |
| **MICHAEL PUGH, et al.,** | ) | **REPORT AND RECOMMENDATION** |
| **Defendants.** | ) | **OF MAGISTRATE JUDGE** |

This matter is before the undersigned upon Plaintiff Christian E. Gaybor's (Plaintiff) Motion for Preliminary Injunction and a Motion to Dismiss/Suggestion of Mootness filed by Defendants, Director of the Federal Bureau of Prisons ("BOP") Charles Samuel; Northeast Ohio Correctional Center ("NEOCC") Warden Michael Pugh; and NEOCC Medical Director Ms. Hivner ("Defendants").  ECF Dkt. #s 1, 12.  For the following reasons, the undersigned recommends that the Court DENY Plaintiff's Motion for Preliminary Injunction (ECF Dkt. #1), DENY Defendant's Motion to Dismiss/Suggestion of Mootness (ECF Dkt. #12), and DISMISS Plaintiff's case without prejudice.  (ECF Dkt. #1).

**I.      FACTUAL AND PROCEDURAL HISTORY**

On February 13, 2014, Plaintiff filed the instant Motion for Preliminary Injunction requesting that Defendants send him to a medical facility for aftercare and not return him to NEOCC/CCA after he underwent a heart valve transplant.  ECF Dkt. #1 at 1.  Plaintiff indicated that on February 7, 2003, he was sentenced to 264 months imprisonment with the BOP and in the District Court's Judgment of Commitment, the Judge recommended that he be housed in a medical facility in the southwestern United States due to the warmer climate for his heart health.  *Id.* at 2.  Plaintiff

explained that he was transferred to Fort Worth, Texas where he underwent a heart surgery and was classified as a Care Level IV Patient. *Id*. He indicated that he was then transferred to a New Jersey facility in November of 2004 as his Care Level dropped to Level II, which did not require him to be in a medical facility. *Id*. at 2, 3, n.1.

Plaintiff further indicated that he then requested transfer to a facility that had an immigration hearing program so that he could resolve his immigration issues and he was thereafter transferred to such a facility in October of 2012. ECF Dkt. #1 at 2.

However, in January of 2013, Plaintiff indicated that he was transferred to NEOCC, a non-immigration hearing program site and a maximum security prison/detention center. ECF Dkt. #1 at 3. He requested to be transferred back to a medical facility in October of 2013 based upon the recommendation of the NEOCC surgeon so that he could undergo another heart surgery, but that request was denied. *Id.* Plaintiff alleges that a new rule implemented by the BOP requiring the transfer of inmates to contract facilities that do not have certain benefits deprives foreign/non-U.S. citizen inmates of their constitutional rights based upon their nationality, race, or immigration status in violation of the Fifth and Fourteenth Amendment rights. *Id*. at 4[1]. Plaintiff also alleges an Eighth Amendment violation due to his placement at NEOCC because of the cold weather and the impact that it has on his heart condition. *Id*. at 6.

Plaintiff reported that he pursued the transfer as required by the NEOCC administrative remedy procedure and he was awaiting a response from the region so that he could appeal to the

---

[1] Plaintiff raised ths assertion concerning the constitutionality of a December 13, 2012 Memorandum to All Regional Directors, but he did not raise it at any telephonic conferences and he provides no further argument or support for this claim.

Central Office in Washington, D.C., which he had to do before proceeding with the instant case in this Court. ECF Dkt. #1 at 4. However, Plaintiff indicated that he was informed that he was scheduled for another surgery and thus would be leaving the facility, and making him wait to pursue the instant suit in order to exhaust his administrative remedies would cause him harm before he could exhaust those remedies. *Id*.

Plaintiff requests that the Court bar his return to NEOCC after his surgery and order Defendants to return him to a medical facility in the southwest region of the United States so that he would be provided with the needed aftercare following his surgery. ECF Dkt. #1 at 8.

On February 14, 2014, the Honorable Benita Pearson referred the instant case to the undersigned. ECF Dkt. #2. Judge Pearson requested that the undersigned determine whether Petitioner's Motion for Preliminary Injunction should be converted to a Motion for Temporary Restraining Order ("TRO"). *Id.* She further ordered that if the undersigned converts Plaintiff's motion to a motion for TRO, the undersigned should conduct a hearing and issue a Report and Recommendation. *Id*. She further ordered that if the undersigned does not convert the Motion, the undersigned should issue a Report and Recommendation on the Motion. *Id.*

On February 19, 2014, the undersigned conducted a telephonic conference with Plaintiff pro se and counsel for Defendants. ECF Dkt. #5. The Court set a briefing schedule as to Plaintiff's Motion for Preliminary Injunction. *Id*.

On March 17, 2014, Defendants filed the instant Motion to Dismiss/Suggestion of Mootness. ECF Dkt. #12. Judge Pearson referred that motion for a Report and Recommendation from the undersigned. ECF Dkt. #13. Defendants asserted in that Motion that the Court should dismiss the instant case as moot because the Court lacked subject matter jurisdiction. ECF Dkt. #12 at 1.

3

Defendants asserted that the Court lacked jurisdiction because Plaintiff received the relief that he requested since on March 14, 2014, the BOP approved a medical transfer for Plaintiff to the Federal Medical Center ("FMC") in Lexington, Kentucky. *Id.* at 2. Defendants contended that Plaintiff's Motion for Preliminary Injunction was moot because he received a transfer to a medical facility for surgery and post-operative care. *Id.* In support, they attached the declaration of Donna Broome, a Legal Assistant employed by the United States Department of Justice, Federal BOP, Northeast Regional Office, in Philadelphia, Pennsylvania, who attached Inmate Profile Data for Plaintiff which showed that he was approved for a medical transfer to FMC Lexington for purposes of surgery. ECF Dkt. #12-1. Ms. Broome indicated that information regarding the date and/or time of the transfer was not available due to serious safety concerns and thus would not be disclosed prior to an inmate's arrival at the receiving institution. *Id.* at 2.

Plaintiff thereafter filed a notice of his transfer to FMC Lexington, Kentucky, so the undersigned issued an Order requiring Defendants to serve their motion upon Plaintiff at that facility. ECF Dkt. #s 15, 16. The undersigned further ordered Plaintiff to respond to Defendants' Motion and ordered Defendants to supplement their Motion with proper information concerning Plaintiff's surgery and post-operative care. ECF Dkt. #16. The undersigned indicated that without further information concerning Plaintiff's surgery and post-operative care, the undersigned could not issue a Report and Recommendation on Defendants' Motion. *Id.*

On May 5, 2014, Plaintiff filed a motion to hold the Court's ruling in abeyance. ECF Dkt. #18. He indicated that Defendants had misinterpreted or misrepresented his Complaint/Motion for Preliminary Injunction because he requested not only that he be transferred to a medical facility, but also that he receive his heart valve surgery, be granted post-surgery rehabilitation, and remain at a

4

medical facility. *Id*. Plaintiff indicated that the fact that he was transferred was only one part of his request and therefore the Court should still maintain jurisdiction as his Complaint/Motion for Preliminary Injunction was not rendered moot. *Id*. at 2.

On May 21, 2014, Defendants filed a supplement to their Motion to Dismiss/Suggestion of Mootness. ECF Dkt. #19. They indicated that Plaintiff was scheduled for heart valve surgery during the week of May 19, 2014 at a local hospital near FMC Lexington and he would remain there after surgery until the treating physician determines that he was stable enough to be discharged, and thereafter he would then return to FMC Lexington. *Id*. at 2. Defendants indicated that Plaintiff would be designated a Care Level IV Patient upon discharge from the hospital and would remain at FMC Lexington or a similar BOP facility as long as his post-operative care needs were designated as Care Level III or IV. *Id*. They asserted that Plaintiff received the relief that he sought and therefore his case was moot and this Court lacked subject matter jurisdiction. *Id*.

Defendants attached the Declaration of Zahra Tavakoli, M.D., who indicated that she was the Clinical Director employed by FMC Lexington. ECF Dkt. #19-1 at 1. She explained that she had access to most records maintained at FMC Lexington and on the BOP computerized database, including Plaintiff's medical records. *Id*. She indicated that the records showed that Plaintiff was scheduled for surgery during the week of May 19, 2014 and after his surgery, he would remain in the local hospital until his treating physician deemed him sufficiently stable to be discharged, at which time he would return to FMC Lexington as a Care Level IV patient. *Id*. Dr. Tavakoli further noted that Plaintiff's medical care level would change as these were clinical determinations based upon an inmate's health and need for medical care and follow-up. *Id*. at 2. She explained that she could not predict how long after surgery Plaintiff would remain a Care Level IV inmate, but he

5

would remain at FMC Lexington or a similar institution so long as he remained a Care Level III or IV inmate. *Id*. She also explained that Plaintiff would be returned to NEOCC or another institution if a clinical determination was made that he had become a Care Level II inmate. *Id.* Dr. Tavakoli indicated that she did not have the information that would enable her to predict when and/or if Plaintiff would become a Care Level II or below inmate. *Id.*

On July 16, 2014, the undersigned conducted another telephonic conference, with Plaintiff participating pro se and counsel for Defendants, Assistant United States Attorneys Renee Bacchus and Lisa Hammond-Johnson, and Attorney Timothy Bojanowski, participating. Plaintiff represented at that hearing that he underwent the heart valve surgery on May 21, 2014 and he was now a Care Level IV inmate at FMC Lexington, which resolved part of his Complaint/Motion for Preliminary Injunction. Plaintiff represented that he sent a letter to the Court regarding the procedure, but the Court has not yet received such a letter.

Plaintiff further indicated at the telephonic conference that the other part of his lawsuit concerning remaining at a medical facility has not been resolved. Plaintiff requested that he be able to stay at a medical facility for the remainder of his sentence, which he indicated expired in February of 2017.

Counsel for Defendants responded that Plaintiff made no such request in his Complaint/Motion for Preliminary Injunction to remain in a medical facility for the remainder of his sentence and that even if he had, this Court had no such authority to grant such relief because whether Plaintiff remains in a medical facility is a BOP determination based upon a medical determination as to whether Plaintiff becomes a Care Level II or less inmate or whether he stays at a Care Level III or IV.

6

The undersigned requested that counsel for Defendants obtain a medical report from a doctor at FMC Lexington familiar with Plaintiff's condition and surgery and file it with the Court. On July 28, 2014, Defendants filed the Declaration of Dr. Tavakoli. ECF Dkt. #21. In this Declaration, Dr. Tavakoli indicates that Plaintiff is currently in stable condition following his surgery and his surgeon had cleared him and needed to see him again in one year. *Id*. She further noted that even though Plaintiff was still designated at Care Level IV, he could be categorized at Care Level III. *Id.* Nevertheless, she explained that she wanted to keep Plaintiff at a Care Level III or IV facility and monitor him for up to six months, and that following this period, he would have to be reevaluated. *Id.* at 1-2. She indicated that at that time, he could be designated a Care Level II or I inmate. *Id*. at 2. She concluded that at the present time, she saw no clinical indication that Plaintiff would require a permanent or indefinite designation to FMC Lexington or any other Care Level IV facility. *Id*.

## II. LAW AND ANALYSIS

### A. DEFENDANTS' MOTION TO DISMISS/SUGGESTION OF MOOTNESS

Although labeled as a Motion to Dismiss/Suggestion of Mootness, Defendants move this Court to dismiss Plaintiff's complaint with prejudice because he received the care that he sought, which was a transfer to a BOP-operated medical facility for surgery and post-operative care. ECF Dkt. #12 at 2. Defendants present law on the subject of mootness and move the Court to find that Plaintiff's complaint is moot because he received the care that he requested. *Id.*

However, at the time that they filed their Suggestion of Mootness on March 17, 2014, Plaintiff had not yet been transferred or undergone the heart valve surgery. The undersigned ordered Defendants to provide further support for their motion and on April 25, 2014, Defendants filed a Notice of Compliance with an attachment from Ms. Sutton, a paralegal employed by the United

7

States Department of Justice, Federal BOP, Northeast Regional Office in Philadelphia, Pennsylvania. ECF Dkt. #s 17, 17-1. She declared that she had access to most of the records maintained in the ordinary course of business and the computerized database at the Federal BOP and she reviewed Plaintiff's records, which showed that on March 25, 2014, Plaintiff was transferred to FMC Lexington. ECF Dkt. #17-1 at 1.

However, Plaintiff filed an opposition brief to Defendants' filing on May 5, 2014, explaining that while he had been transferred to a medical facility on March 25, 2014, which was part of his Motion for Preliminary Injunction, he had not yet received approval for the surgery or for any type of post-operative rehabilitation as he requested and he had not received any approval that he would be able to remain at a medical facility following surgery and post-operative care. ECF Dkt. #18.

The undersigned recommends that the Court DENY Defendants' Motion to Dismiss/ Suggestion of Mootness. ECF Dkt. #12. At the time that Defendants filed the Motion, Plaintiff had not been transferred to a medical facility and had not received approval for surgery. ECF Dkt. #17-1. While Ms. Broome indicated that on March 14, 2014 Plaintiff was approved for a medical transfer, Ms. Sutton indicated that he was not actually transferred to the medical facility until March 25, 2014. ECF Dkt. #s 12-1, 17-1. Further, it was not until Defendants filed the Declaration of Dr. Tavakoli on May 21, 2014 that it was learned that Plaintiff was scheduled for surgery during the week of May 19, 2014. ECF Dkt. #19-1. Plaintiff reported at the undersigned's July 16, 2014 telephonic conference that he had the heart valve surgery on May 21, 2014.

Because Defendants' Motion to Dismiss/Suggestion of Mootness was filed well before Plaintiff's transfer to a medical facility and well before his actual surgery, the undersigned recommends that the Court DENY the Motion as premature. ECF Dkt. #12.

8

**B.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

At the July 16, 2014 telephonic conference, Plaintiff conceded that part of his lawsuit had been resolved in that he had been transferred to a medical facility and he had received the heart valve surgery. Thus, the undersigned recommends that the Court dismiss this part of Plaintiff's Complaint/Motion for Preliminary Injunction as moot.

However, Plaintiff asserted both at the telephonic conference and in his opposition to Defendants' Motion to Dismiss/Suggestion of Mootness that other parts of his lawsuit remained outstanding because he had not been granted post-surgery rehabilitation and he had not received approval to remain in a medical care facility for the remainder of his sentence. Defendants countered that Plaintiff made no such requests in his Motion for Preliminary Injunction and this Court had no jurisdiction to determine where an inmate serves his sentence.

The undersigned recommends that the Court find that Plaintiff did indeed request that he receive aftercare and remain in a medical facility following his heart valve surgery. ECF Dkt. #1 at 6-8. Accordingly, these remaining portions of Plaintiff's Motion for Preliminary Injunction must be analyzed.

In determining whether to grant a preliminary injunction, a court balances the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; or (4) whether the public interest would be served by issuance of the injunction. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 0249 (2008). These factors are not prerequisites, but are factors that are to be balanced against each other. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l*

*Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998) (citation omitted). It is Plaintiff who bears the burden of demonstrating his entitlement to a preliminary injunction. *Id*. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Layette Urban County Government*, 305 F.3d 566, 573 (6th Cir.2002). Additionally, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Learly v. Daeschner*, 228 F.3d 729, 739 (6th Cir.2000). Moreover, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.1995). "[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The undersigned recommends that the Court find that Plaintiff's likelihood of success on the merits of his case is low. Plaintiff has been transferred to a medical facility as requested, has undergone the heart valve surgery, and is receiving post-operative care at a medical facility. Thus, the undersigned recommends that the Court find that these claims are moot since Plaintiff has been transferred to FMC Lexington and has received part of that which he requested. *See Murdock v. Tenn.*, 2013 WL 5427862, at *9 (W.D. Tenn. 2013), citing *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir.2003) (declaratory and injunctive claims against prison staff moot when inmate was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Tramber v.*

*Pleasant*, No. 4:12CV–P31–M, 2012 WL 4594339, at *5 (W.D.Ky. Oct. 2, 2012), unpublished (inmate claims for transfer and medical care moot when he was transferred to another facility).

As to Plaintiff's remaining claims of his continued stay at FMC Lexington or another medical facility until his sentence expires, the undersigned notes that the BOP is vested with complete authority to determine the custody classification and security levels of federal inmates, direct their confinement in any available facility, and freely transfer them (or refuse to transfer them) from one facility to another. *See* 18 U.S.C. § 3621(b). Moreover, the Court "is ill-equipped to micro-manage medical treatment or second-guess the BOP's administrative decisions, including transfers." *See Westlake v. Lucas,* 537 F.2d 857, 860, n. 5 (6th cir.1976)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003) ("[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill equipped"). Thus, the courts are reluctant to become involved in determinations made by prison officials as to the transfer and placement of prisoners. *See Christian v. Mich. Dept. of Corrections- - Health Servs*., No. 12-12936, 2013 WL 607783, at *3, n.3 (E.D. Mich. Jan. 28, 2013), unpublished. Accordingly, the undersigned recommends that the Court find that Plaintiff's likelihood of succeeding on his remaining claims at the present time is weak.

Moreover, Plaintiff has failed to show that irreparable harm will result if the preliminary injunction is not issued. While the preliminary injunction factors are to be balanced, "the hallmark of injunctive relief is a likelihood of irreparable harm." *Christian*, 2013 WL 607783, at *2, citing

11

*Patio Enclosures, Inc. v. Herbst*, 39 Fed. App'x 964, 967 (6th Cir. 2002)("the demonstration of some irreparable injury is a sine qua non for issuance of an injunction.").

Dr. Tavakoli's most current Declaration indicates that Plaintiff will remain at FMC Lexington for the next six months and will then be reevaluated and a medical determination will be made as to whether his Care Level will decrease. ECF Dkt. #21-1 at 1-2. She concluded that at the present time, no clinical indication existed which would require Plaintiff to permanently remain at or be indefinitely designated to FMC Lexington or to any other Care Level IV facility. *Id.* at 2.

The purpose of a preliminary injunction is to prevent future harm and Plaintiff cannot show at this time that future harm will occur if he does not remain in a medical facility beyond the next six months already approved for him by medical staff at FMC Lexington. *See Fisher v. Goord*, 981 F.Supp. 140, 168 (W.D.N.Y. 1997); *Rouse v. Caruso*, No. 06-10961, 2007 WL 909583, at *6 (E.D. Mich. Mar. 23, 2007), unpublished ("[p]laintiffs have not provided evidence that they will require future medical attention, or that the staffing levels alone will make it impossible for them to receive adequate medical care. In the absence of such evidence, plaintiffs are not entitled to injunctive relief based on the allegedly inadequate medical attention they received in the past."). Further, Plaintiff must show that "irreparable harm is 'both certain and immediate, rather than speculative or theoretical' to satisfy [his] burden to receive preliminary injunctive relief.*" Conway v. Purves*, 963 F.Supp.2d 708, 712 (E.D. Mich. 2013), citing *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 Fed.Appx. 929, 943 (6th Cir.2007), quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991) and citing *Abney v. Amgen, Inc.,* 443 F.3d 540, 551 (6th Cir.2006). Plaintiff's speculation that he will suffer harm if he does not remain at a medical facility until the expiration of his sentence in February of

12

2017 is both uncertain and remote as his current medical condition is stable as per Dr. Tavakoli and his future medical condition is unknown but anticipated to be sufficiently stable to warrant downgrading his Care Level in the future. Consequently, the undersigned recommends that the Court find that Plaintiff cannot establish the irreparable harm factor for preliminary injunctive relief at this time.

Should the Court decide that Plaintiff has not shown a strong and substantial likelihood of success on the merits and/or has failed to show irreparable harm as required, it may deny Plaintiff's Motion for Preliminary Injunction without considering the other factors. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625, 632 (6th Cir. 2000)("[a] finding that there is simply no likelihood of success on the merits is usually fatal."). Nevertheless, should the Court proceed to balance the last two factors, the undersigned recommends that the Court find that issuance of the preliminary injunction may cause substantial harm to others because it may impact the prison medical facility's ability to treat those requiring immediate medical treatment if Plaintiff is allowed to remain in a medical facility and take a medical placement that another inmate may need. Further, it would disrupt the administration of the prison. The public interest also would not be served by the granting of such a motion as it may interfere with the daily operations of the prison medical facility. *See Carter v. Mich. Dep't of Corrections*, No. 12-12621, 2013 WL 5291567, at \*6 (E.D. Mich. Sept. 19, 2013), unpublished.

It may well be that Plaintiff's medical condition may change upon the expiration of the six-month monitoring period at FMC Lexington and result in maintaining his Care Level at III or IV. But at the current time, the undersigned recommends that the Court find that Plaintiff cannot adduce evidence establishing that he is entitled to the injunctive relief that he requests.

13

### III.    **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court DENY Defendants' Motion to Dismiss/Suggestion of Mootness (ECF Dkt. #12), DENY Plaintiff's Motion for Preliminary Injunction (ECF Dkt. #1) and dismiss Plaintiff's claims without prejudice.

DATE: July 30, 2014                              */s/George J. Limbert*
                                                                GEORGE J. LIMBERT
                                                                UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).